**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **CHAD M. BUBRICK,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **NO. 5:09-CV-13 (MTT)** |
| **VS.** | : | |
| | : | |
| **DAVID FRAZIER,** *et al.,* | : | |
| | : | **Proceedings Under 42 U.S.C. §1983** |
| **Defendants.** | : | **Before the U.S. Magistrate Judge** |
| _____ | : | |

## ORDER AND RECOMMENDATION

Before the court is a Motion for Summary Judgment filed by Defendants Jo Hunding, Lieutenant Binion, David Frazier, Carl Lift, and David Butts.[1] Doc. 94. For the reasons set forth below, it is **RECOMMENDED** that the Motion be **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts, taken in the light most favorable to Plaintiff, are as follows: On July 19, 2007, Plaintiff Bubrick, a state prisoner diagnosed with the skin disorder Dermatitis Herpetiformus (DH), was transferred from Coastal State Prison to Hancock State Prison. At that time, the Plaintiff's DH was being treated with a medication called Dapsone. A medication packing list prepared two days before he was transferred indicates that, on that date, the Plaintiff had a 34 day supply of Dapsone in his possession.[2]

_____

[1] On August 10, 2010, after the instant motion was filed, a previously entered recommendation to dismiss Defendant Binion was adopted and made the order of the court. Doc. 104.

[2] Dapsone tablets are taken one at a time once per day.

Upon his arrival at Hancock State Prison, the Plaintiff was seen by medical staff for an intake screening. The following day, the Plaintiff returned to the medical department and was given a prescription for a two (2) month supply of Dapsone as well as the antibiotic Bactrim. On July 21, 2007, he was given a thirty (30) day supply of Dapsone and sixty (60) Bactrim tablets. On July 27, 2007, he was examined and given twenty-one (21) tablets of the antibiotic Keflex and a tube of Gentamicin antibiotic ointment. On August 8, 2007, during his first encounter with Defendant Lift, the two men discussed the treatments for DH. Following an August 16, 2007 visit with Defendant Lift, the Plaintiff's DH medication was changed from Dapsone to Erythromycin.[3]

On September 12, 2007, September 25, 2007, and September 28, 2007, while on Erythromycin, the Plaintiff returned to the medical department complaining about skin rashes. On each occasion, the Plaintiff was examined by a doctor or nurse, advised not to scratch or pick at the inflamed areas and, during the September 25, 2007 meeting, was prescribed a five (5) day course of Benadryl.

On October 2, 2007, the Plaintiff was again examined by Defendant Lift. At that time, the Plaintiff was put back on Dapsone. He was also given prescriptions for Prednisone and Bactrim. Thereafter, on October 29, 2007, November 29, 2007, December 17, 2007, January 22, 2008, February 18, 2008, April 10, 2008, May 20, 2008, May 28, 2008, and June 2, 2008, Defendant Lift examined and/or provided the Plaintiff with additional prescriptions for Dapsone. In addition to the aforementioned examinations, and during the applicable time frame, Plaintiff Bubrick was seen by consulting dermatologists on at least three occasions. On August 5, 2008, Plaintiff Bubrick was transferred from Hancock State Prison to Coffee Correctional Facility.

---

[3] There is a dispute as to whether or not the Plaintiff sought a change in his DH medication. According to Defendant Lift, the Plaintiff insisted that he be prescribed a different medication to treat his DH despite being told Dapsone was the best available solution. Plaintiff Bubrick claims that he never made any such request.

On January 9, 2009, the Plaintiff executed the instant Complaint alleging that the Defendants had been deliberately indifferent to his serious medical needs. His primary claim involves an assertion that Defendant Lift improperly discontinued and/or withheld the Dapsone medication and that, despite knowledge of the Plaintiff's resulting predicament, the other Defendants failed to intercede. In response, and following an extensive exchange of various other pleadings, the Defendants filed the instant Motion for Summary Judgment.

<u>DISCUSSION</u>

A review of the record in this case reveals that the Plaintiff has failed to present evidence sufficient to create a genuine issue of material fact with regard to his claims. To establish a violation of the Eighth Amendment related to medical treatment, a prisoner must allege acts or omissions sufficiently harmful to evidence "deliberate indifference to a serious medical need." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). To show deliberate indifference, the prisoner must satisfy both an objective and a subjective component. <u>Hill v. DeKalb Regional Youth Detention Center,</u> 40 F.3d 1176, 1186 (11th Cir. 1994) ), *overruled in part on other grounds,* <u>Hope v. Peltzer</u>, 536 U.S. 730 at 739 (2002), (citing <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991) (subjective component), <u>Whitley v. Albers</u>, 475 U.S. 312 (1986)(subjective component), and <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1981)(objective component). To satisfy the objective component, a prisoner must demonstrate that he has a serious medical need. <u>Id.</u> See also <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)); <u>Taylor v. Adams</u>, 221 F.3d 1254, 1257 (11th Cir. 2000). To satisfy the subjective component, a prisoner must show that a defendant knowingly and intentionally refused to provide treatment for the aforementioned need. <u>Hill</u>, 40 F.3d at 1186; <u>Mandel v. Doe</u>, 888 F.2d 783, 788 (11th Cir. 1989). See also <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994)(noting that deliberate indifference requires a sufficiently culpable state of mind and can only be satisfied by showing that a prison official knew of and disregarded an excessive risk to inmate health or safety); <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490-91 (11th Cir. 1996).

In this case, Plaintiff's medical records as well as many of his own allegations provide a detailed account of the prompt and continuous medical care and treatment that he received for his skin condition. As such, even assuming that the Plaintiff satisfied the objective requirement of demonstrating a serious medical need, his assertion that the Defendants knowingly and intentionally refused to provide him with constitutionally adequate medical care and treatment is untenable.

Accordingly, and as it appears that the Defendant's are entitled to judgment as a matter of law, **IT IS RECOMMENDED** that their Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

Also before the Court is Plaintiff Bubrick's motion seeking leave to file a sur-reply. Doc. 114. In view of the above Recommendation, this Motion is **DENIED** as moot.

**SO ORDERED AND RECOMMENDED**, this 12th day of January, 2011.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge